UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

In re:

SSK Partners LLC, an Illinois limited
liability company,

    Debtor.

Case No. 11-bk-49091

Chapter 11

Judge Timothy A. Barnes

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

The matter before the court is the Motion to Modify the Automatic Stay, filed January 25, 2012 (the "Motion") [Docket No. 40] of BMO Harris Bank, N.A. ("Harris"), pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"). Harris requests that the court permit a state court-appointed receiver to resume control of debtor SSK Partners LLC's ("SSK" or, the "Debtor") real property and allow Harris to continue the pending foreclosure action against SSK.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the Bankruptcy Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with § 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A request to modify the stay under section 362(d) of the Bankruptcy Code arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(G); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976–77 (N.D. Ill. 1992).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

In considering the Motion, the court has considered the arguments of the parties at the trial conducted on August 27, 28 and 30, 2012 (the "Trial"). The court has reviewed the Motion itself, the various attached exhibits submitted in conjunction therewith, as well as:

1

(1) The Debtor's Response to the Motion, filed February 17, 2012 (the "Response") [Docket No. 67];

(2) The Reply of Harris in Support of the Motion, filed February 24, 2012 (the "Reply") [Docket No. 79];

(3) The Agreed Order Designating Debtor as a Single Asset Real Estate Entity, filed March 6, 2012 (the "Agreed Order") [Docket No. 81];

(4) The Supplemental Memorandum of Harris in Support of the Motion, filed July 30, 2012 [Docket No. 131]; and

(5) The Debtor's Response to the Supplemental Memorandum of Harris in Support of the Motion, filed August 15, 2012 [Docket No. 162].

Though the foregoing is not an exhaustive list of the filings in the above-captioned adversary proceeding, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 Westlaw 69146 at *2 (N.D. Ill. March 8, 1993), *In re Fin. Partners*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## FACTUAL HISTORY

From the foregoing review and consideration, the court finds the following facts to be undisputed:

(1) The property around which this dispute centers is the property commonly known as 1033 West Van Buren Street, Chicago, Cook County, Illinois (the "Property"), a seven-story commercial office building.

(2) Legal title to the Property is held pursuant to a land trust agreement dated April 17, 2006 and known as Trust Number 15668 (the "Trust").

(3) SSK owns 35% of the beneficial interest in the Trust.

(4) Phil Stefani ("Stefani"), a member and manager of SSK, owns the remaining 65% of the beneficial interest in the Trust.

(5) SSK is a "Single Asset Real Estate Entity" within the meaning of § 101(51)(B) of the Bankruptcy Code.

(6) On May 25, 2006, SSK issued a promissory note (the "Note") for $7,000,000.00 to Amcore Investment Group, N.A. ("Amcore"), and granted Amcore a Construction Mortgage, Security Agreement, Assignment of Rents and Leases, and Fixture Filing on the Property (the "Loan Documents").

(7) Amcore leased a large portion of the Property from SSK.

(8) On November 11, 2008, Stefani and Keith Lord each executed a guaranty on the performance and payment of the outstanding obligations of SSK to Amcore (the "Guaranties").

(9) On April 23, 2010, Harris purchased and took assignment of certain assets of Amcore, including the Note, Loan Documents, and the Guaranties in the Property. Harris repudiated Amcore's lease of the property, causing SSK to lose significant rental income.

(10) On June 14, 2010, SSK ceased paying Harris on the Note and Loan Documents, and Harris commenced a foreclosure action against the Property and SSK in state court. In the foreclosure case, Harris asserted a senior mortgage lien on the Property.

(11) On November 22, 2011, an order was entered in the foreclosure case appointing a receiver for the property. The receiver did not take possession of the property.

(12) This Chapter 11 case was filed on December 6, 2011 (the "Petition Date"). Harris alleges that as of the Petition Date, SSK owed payments to Harris on the Property in the total amount of $8,348,893.59.

## DISCUSSION

The question presented to the court is whether justification exists under 11 U.S.C. § 362(d)(1), (2) or (3) to grant Harris relief from the automatic stay imposed by the filing of the above-captioned case. For the reasons more clearly stated below, the court answers this question in the negative.

A.  Standard

Harris requests relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), (2) and (3). These provisions state, in pertinent part, that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the

3

>order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—
>
>>(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time;

11 U.S.C. § 362(d)(1), (2) & (3).

Under subsection (d)(1), the stay may be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). There is no definition of the term "cause" as used in section 362(d)(1). *In re Betzold*, 316 B.R. 906, 915 (Bankr. N.D. Ill. 2004) (Schwartz, J.) (*citing In re Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991)). The determination whether cause exists to lift the stay is a fact-intensive inquiry made on a case-by-case basis. *Id.*

Under subsection (d)(2), the stay may be lifted if the debtor does not have equity in the property and if "such property is not necessary for an effective reorganization." 11 U.S.C. § 362(d)(2)(A) & (B). The first element of subsection (d)(2) is satisfied as SSK conceded in the Response that it has no equity in the property. In order to satisfy the second element, that the property is "necessary to an effective reorganization," a party must show that there is a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988).

Under subsection (d)(3), in an action against a single asset real estate entity, one must show that "the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time." 11 U.S.C. § 362(d)(3). As the parties have stipulated in the Agreed Order that SSK is a single asset real estate entity within the meaning of section 101(51)(B) of the Bankruptcy Code, section 362(d)(3) applies. "[T]he standard for interpreting section 362(d)(3)(A) is nearly identical to the standard for determining whether or not property is 'necessary for an effective reorganization in section 362(d)(2)(B)." *In re Mayslake Vill.-Plainfield Campus, Inc.*, 441 B.R. 309, 324 (Bankr. N.D. Ill. 2010) (Squires, J.) (*quoting In re Windwood Heights, Inc.*, 385 B.R. 832, 837–38 (Bankr. N.D. W.Va. 2008)). Therefore, under either subsections (d)(2) or (3), the court must determine whether there is a "reasonable possibility of a successful reorganization within a reasonable time." The difference, if any, is that subsection (3) focuses on a debtor's filed plan in specific while subsection (2) focuses on the debtor's reorganization in general, irrespective of the current plan status.

B.    Burdens

The decision to modify the automatic stay pursuant to 11 U.S.C. § 362(d) is committed to the sound discretion of the bankruptcy court. *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985); *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982).

Under section 362(g), as the party requesting relief from stay, the Movant bears the burden on the issue of the Debtor's equity in the Property. 11 U.S.C. § 362(g)(1); *see also Fed. Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 208 (N.D. Ill. 1993); *In re Standfield*, 152

B.R. 528, 534 (Bankr. N.D. Ill. 1993) (Squires, J.). The Debtor, as the party opposing such relief, has the burden of proof on all other issues. 11 U.S.C. § 362(g)(2); *see also Fed. Nat'l Mortg.*, 153 B.R. at 208; *Standfield*, 152 B.R. at 534.

As with any request of the court, the party making the request also has the initial burden of producing evidence sufficient to establish a *prima facie* case of entitlement. *In re Pelham Enters., Inc.*, 376 B.R. 684, 689 (Bankr. N.D. Ill. 2007) (Squires, J.). The party opposing such relief must then rebut the *prima facie* case. In order for Harris to succeed on their Motion under subsection (1), Harris must establish a *prima facie* case that cause exists to lift the automatic stay. SSK's burden is to rebut this presumption, not to prove that cause does not exist. *In re Tribune Co.*, 418 B.R. 116, 127 (Bankr. D. Del. 2009) (quoting *In re Rexene Products Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992) ("To apply section 362(g)(2) otherwise to section 362(d)(1) would force the debtor to prove a negative, that no cause exists.")).

Harris asserts that the stay should be lifted because SSK has no reasonable possibility of reorganizing in a reasonable time and because SSK's plan falls short of complying with 11 U.S.C. § 1129. SSK, however, does not need to prove a confirmable plan at this early stage of the case. As the Seventh Circuit has made clear, a hearing to determine whether the stay should be lifted is meant to be summary in character. *Vitreous Steel Products Co. v. Miller*, 911 F.2d 1223, 1232 (7th Cir. 1990). To hold otherwise would be to read out of existence the time periods afforded a chapter 11 debtor to formulate, propose and solicit acceptances for a plan.

The extent to which a debtor must prove the possibility of an effective reorganization in a lift stay proceeding is judged on a sliding scale and depends on the stage of the case. *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) (Katz, J.) (citing *United Sav. Ass'n of Texas* 484 U.S. at 376); *In re Ashgrove Apts. of DeKalb Cnty., Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990). As the court has explained:

> In the initial stages of a Chapter 11 proceeding, the debtor should be granted significant leeway in attempting to establish that successful reorganization is a reasonable possibility. However, as the case progresses, so too does the debtor's burden of proving that successful reorganization may be reasonably expected. Even at the later stages, a motion for relief from stay should not be turned into a confirmation hearing; that is not the debtor's burden of proof. Rather, the test should be viewed as a continuum with the scales tipping in favor of the debtor in the early stages and the burden of proof becoming greater in the later stages.

*In re Cadwell's Corners P'ship*, 174 B.R. at 759 (quoting *In re Ashgrove Apartments*, 121 B.R. at 756).

The Motion was brought within two months of the Petition Date. While that timing may have been appropriate under either 362(d)(1) or (d)(2), it was inappropriate under section 362(d)(3). *See In re Hope Plantation Group, LLC*, 393 B.R. 98, 104 (Bankr. D.S.C. 2007) (filing a 362(d)(3) motion within the 90 days after the petition date, even if not heard until after the expiration of that period, is premature). Regardless, in the court's opinion, this was too early given the complexity of this chapter 11 case for the Debtor to have fully established its proposed reorganization. The issues in this case are not yet fully developed, and this is not a confirmation hearing. The debtor should be granted significant leeway in attempting to establish a successful reorganization, especially given that section 362(d)(3) expresses a debtor's burdens in only loose and hopeful terms. *Id.*

5

C.   Analysis

At the heart of this dispute is the value of the Property and SSK's ability to confirm a plan based on that value. With respect to the Property's value, the court has heard testimony from an expert provided by Harris ("Harris's Expert") as well as from Stefani on behalf of SSK. *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) ("[T]he federal rules, like Indiana's rules, have been interpreted to permit a property owner to testify about the value of his property."). SSK also provided a fact witness to clarify how Stefani derived his valuation.[1]

In direct contrast to the differing role of Harris's Expert and SSK's fact witness, however, the testimony of SSK's fact witness was ultimately, in the court's opinion as the finder of fact in this matter, much more reliable than Harris's Expert. Harris's Expert behaved on cross-examination in a manner that impeached his reliability.[2] In stark contrast, SSK's fact witness was reasoned and respectful, and on cross-examination cooperated with Harris's counsel and made certain concessions in favor of the analysis performed by Harris's Expert. In short, Harris's Expert was neither reliable nor credible.

In addition, issues exist with the expert report (the "Expert Report") submitted by Harris. On cross-examination, it became clear that a number of the documents relied on in the Expert Report were not attached. While Harris's counsel demonstrated that the documents were in evidence by other means, this had the appearance of being deficient under Rule 26 of the Federal Rules of Civil Procedure (the "Rules"). Fed. R. Civ. Pro. 26(a)(2)(B)(iii) ("The report must contain … any exhibits that will be used to summarize or support them."). This, in and of itself, is not insurmountable. However, the Expert Report also failed to disclose the compensation Harris's Expert, or the previous cases in Harris's Expert had testified in the detail required by the Rules. Fed. R. Civ. Pro. 26(a)(2)(B)(v) & (vi). The court is empowered to exclude expert reports for failure to comply with the aforementioned Rules, either on the motion of a party or *sua sponte*. *See* Fed. R. Civ. P. 37(c)(1); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704–705 (7th Cir. 2009) (the court may consider the admissibility of expert testimony *sua sponte*); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (failure to comply with Rule 26(a)(2)'s requirements may result in offending party not being allowed to introduce the expert witness's testimony as evidence on a motion, at a hearing, or at a trial); *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005) (exclusion is "automatic and mandatory" unless the offending party can establish that its violation of Rule 26(a)(2) was either justified or harmless).

For the foregoing reasons, despite the court's initial authorization allowing Harris's Expert to testify, the court now finds that Harris has failed to present a credible expert or expert report to

---

[1]   SSK's fact witness was originally offered as an expert witness. Prior to the commencement of the Trial, the court ruled in favor of Harris on its motion *in limine* to exclude SSK's witness from testifying as an expert for failure to disclose him in the required time frame. Fed. R. Bankr. P. 7026 (incorporating, by reference, Rule 26 of the Federal Rules of Civil Procedure); Fed. R. Civ. P. 26(a)(2)(D). The court did, however, accept Harris's Expert as an expert witness based on his extensive credentials and the timely disclosure of him as an expert by Harris's counsel. Fed. R. Bankr. P. 7026; Fed. R. Civ. P. 26(a)(2)(A) & (D).

[2]   For example, on cross-examination, Harris's Expert —previously a licenses real estate broker in Illinois—repeatedly feigned ignorance as to what it means to act as a broker in a commercial leasing transaction, in a transparent effort to avoid answering the questions of SSK's counsel. This behavior pervaded the testimony of Harris's Expert on cross-examination.

justify its valuation of the property. *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) (the court can make a reliability determination of an expert witness during, rather than in advance of, trial). The court exercises its authority to exclude or disregard Harris's evidence in this regard, as the evidence does not meet the standards of reliability. *Id.* While Harris's additional fact witness was helpful, his testimony and the other evidence submitted by Harris did nothing other than lay the foundation for certain facts and figures to which the parties had already essentially agreed.

The following two questions remain: (1) In the absence of evidence to the contrary,[3] is the testimony and evidence presented by SSK sufficient to show that there exists the possibility of an effective reorganization for the purpose of defeating Harris's section 362(d)(2)(B) claim; and (2) Is the existing plan presented by SSK one which bears a reasonably likelihood of being confirmed for the purposes of defeating Harris's section 362(d)(3) claim? The court finds that, under the current status of the above-captioned cases and the standards delineated in the applicable case law (including that relief from stay hearing are summary in nature per *Vitreous Steel*), the answer to both questions is: it is. The court further finds it has been presented with no alternative grounds for relief from stay under section 362(d)(1) which grounds were advanced sufficiently at trial to merit consideration.

The court is making no determination as to whether the plan will in fact be confirmed. Such a determination is not necessary in that this is a summary proceeding. This is not a hearing under section 1129 of the Bankruptcy Code. Instead, the court merely finds that SSK has met its burden with respect to defending the Motion.

Accordingly, it is the court's conclusion that the Motion is not well taken at this stage in the Debtor's case.

## CONCLUSION

For the foregoing reasons, the court concludes that the Motion can and should be denied, without prejudice to Harris's right to reassert the request at a later stage in this case or should there be a material change in facts or circumstances warranting reconsideration of today's ruling.

A separate order to that effect will be issued concurrent with this Memorandum Decision.

Dated: October 12, 2012

_____
Timothy A. Barnes
United States Bankruptcy Judge

---

[3]    As noted above, Harris has, of course, submitted evidence other than that of the Harris Expert and the Expert Report. The court has considered all of the evidence submitted by each of the parties, and concludes that there are circumstances under which SSK's proposed plan could be confirmed.